UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.

TONY RERAL ANDERSON,

        Defendant.
_____/

File No. 1:02-CR-38

HON. ROBERT HOLMES BELL

## **O P I N I O N**

This matter comes before the Court on Defendant Tony Reral Anderson's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct the sentence imposed upon him by this Court on September 29, 2003. For the reasons that follow, Defendant's motion is denied.

### I.

On June 10, 2003, in accordance with a written plea agreement, Defendant entered a plea of guilty in this Court to one count of conspiracy to distribute in excess of 500 grams of methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a) and 841(b). The plea agreement indicated that the conspiracy had taken place between 1995 and 2001. In the plea agreement, Defendant agreed to cooperate with the government, and the government correspondingly agreed to make a good faith evaluation of the level of Defendant's cooperation in determining whether to file a motion for reduction of sentence pursuant to U.S.S.G. § 5K1.1 and/or FED. R. CRIM. P. 35(b). The parties also agreed that Defendant

was responsible for between 1.5 and 5 kilograms of methamphetamine and that, based on that quantity, the base offense level under the Sentencing Guidelines would be 34. The terms of the written agreement were repeated at the sentencing hearing. (Plea Agreement, Docket #99; Plea Tr. at 15.) The Court also engaged in substantial discussion with Defendant as to the amount of drugs which he had agreed to plead guilty to conspiring to distribute. Defendant acknowledged that, while he personally handled only one pound of methamphetamine, he was aware that he could be held responsible as a co-conspirator for amounts handled by other co-conspirators during the period of the conspiracy and he therefore admitted that he was responsible for between 1.5 kilograms and 5 kilograms of methamphetamine. (Plea Agreement, Docket #99; Plea Tr. at 23-25, Docket #111.)

After completing the necessary interviews, the probation officer issued an initial Presentence Report, in which she concluded that Defendant was attempting to minimize his role, was taking positions inconsistent with the plea agreement, and failed to accept responsibility for the full range of his conduct. The report therefore recommended that Defendant be given an enhancement for obstruction of justice and be denied any reduction for acceptance of responsibility. Defense counsel lodged twelve objections to the report. Following further discussions, the objections were resolved and the probation officer issued a revised Presentence Report, removing the recommendations regarding the calculations for obstruction of justice and acceptance of responsibility. The Presentence Report recommended that Defendant be held responsible for 4.5 kilograms of methamphetamine and

recommended that his criminal history category be increased one level for having committed the crime while on probation.

On September 29, 2003, Defendant appeared for sentencing. At that time, after offering the parties an opportunity to object, the Court adopted the Report and Recommendation of the Magistrate Judge and accepted Defendant's guilty plea. The Court entertained additional objections to the Presentence Report. Counsel successfully objected to a fact that did not affect the guidelines, but neither counsel nor Defendant raised any additional objections to the relevant facts and calculations contained in the Presentence Report.

The Court found that Defendant was responsible for 4.5 kilograms of methamphetamine, placing Defendant at a base offense level of 34, consistent with the plea agreement. The Court further found that Defendant was entitled to a three-point reduction for his timely acceptance of responsibility, resulting in a total offense level of 31. (Sent. Tr. at 6-7.) The Court also found, consistent with the Presentence Report, that Defendant had an initial criminal history category of two. However, because he was on probation at the time of the offense, two points were added, giving Defendant a criminal history category of three. (Sent. Tr. at 7.) Based on the offense level and Defendant's criminal history category, the Sentencing Guidelines range was 135 to 168 months. Had Defendant been given a criminal history category of two, the Guidelines range would have been 121 to 151 months. (Sent.

Tr. at 9-10.)   Neither defense counsel nor Defendant objected to the criminal history category.  (Sent. Tr. at 7.)

The Court rejected the recommendation of the government and the probation officer that Defendant be sentenced to 168 months, at the high end of the guideline range.  The Court concluded that the Sentencing Guidelines had adequately taken into account that Defendant was on probation by increasing the criminal history category by one level.  As a consequence, the Court sentenced Defendant to 150 months in prison, a term within the guideline ranges for both a level two and a level three criminal history category.  The Court also ordered five years of supervised release and imposed a $1,450.00 fine.  Defendant did not appeal his sentence.

## II.

A prisoner who moves to vacate his sentence under § 2255 must show that the sentence was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such sentence, that the sentence was in excess of the maximum authorized by law, or that it is otherwise subject to collateral attack.  28 U.S.C. § 2255.  To prevail under § 2255, "a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict."  *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).  "Relief is warranted only where

a petitioner has shown 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Id.* (quoting *Davis v. United States*, 417 U.S. 333, 346 (1974)).

In order to obtain collateral relief under § 2255, a petitioner must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152, 166 (1982). A petitioner is procedurally barred from raising claims in a § 2255 motion, even those of constitutional magnitude, to which no contemporaneous objection was made or which were not presented on direct appeal. *Frady*, 456 U.S. at 167-68; *Nagi v. United States*, 90 F.3d 130, 134 (6th Cir. 1996). Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in a motion under § 2255 only if the defendant first demonstrates either cause for the default and actual prejudice or that he is actually innocent. *Bousley v. United States*, 523 U.S. 614, 622 (1998). The procedural default rule does not apply, however, to claims of ineffective assistance of counsel. Claims of ineffective assistance of trial counsel generally are not reviewable on direct appeal, because the record may be inadequate to permit review. *See United States v. Kincaide*, 145 F.3d 771, 785 (6th Cir. 1998); *United States v. Tucker*, 90 F.3d 1135, 1143 (6th Cir. 1996). Consequently, such claims may be raised for the first time in a § 2255 proceeding, without regard to a failure to raise them on direct appeal. *See Tucker*, 90 F.3d at 1143; *United States v. Allison*, 59 F.3d 43, 47 (6th Cir. 1995).

In an action to vacate or correct the sentence, a court is required to grant a hearing to determine the issues and make findings of fact and conclusions of law "[u]nless the motion

and the files and records of the case conclusively show that the prisoner is entitled to no relief. . . ." 28 U.S.C. § 2255.

> The statute "does not require a full blown evidentiary hearing in every instance . . . . Rather, the hearing conducted by the court, if any, must be tailored to the specific needs of the case, with due regard for the origin and complexity of the issues of fact and the thoroughness of the record on which (or perhaps, against which) the section 2255 motion is made."

*Smith v. United States*, 348 F.3d 545, 550-51 (6th Cir. 2003) (quoting *United States v. Todaro*, 982 F.2d 1025, 1030 (6th Cir. 1993)). No evidentiary hearing is required if the petitioner's allegations "cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995), *quoted in Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999). Where the judge considering the § 2255 motion also conducted the trial, the judge may rely on his or her recollections of the trial. *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996).

### III.

The files and records in this case conclusively show that Movant is not entitled to relief in this action. Defendant raises three claims. First, he contends that he was denied his Sixth Amendment right to a jury trial by the imposition of a sentence based on factfinding by the Court as to the quantity of drugs for which Defendant would be held responsible and Defendant's probation status at the time of the offense. Second, in a related ground, he alleges that the Supreme Court's decision in *Blakely v. Washington*, 124 U.S. 2531 (2004),

which expanded the reach of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), should be applied retroactively to his case.  Third, he argues that trial counsel was ineffective in failing to object to the two-point enhancement to his criminal history category, in recommending that Defendant plead guilty without having conducted adequate discovery, and in failing to consult with Defendant about his right to appeal his sentence and to assure the timely filing of an appeal.

Defendant's substantive claims, with the exception of his claims of ineffective assistance of counsel, are procedurally defaulted because he failed to raise those claims on direct appeal.  *See Frady*, 456 U.S. at 167-68.  He therefore is not entitled to relief unless he demonstrates either cause and actual prejudice or that he is actually innocent of the offense. *Bousley*, 523 U.S. at 622.

To show cause excusing a procedural default, a defendant must point to "some objective factor external to the defense" that prohibited him from raising his claim on direct appeal.  *See Murray v. Carrier*, 477 U.S. 478, 488 (1986).  Put another way, cause requires a showing of some "external impediment" preventing a defendant from raising the issue on direct appeal.  *See McCleskey v. Zant*, 499 U.S. 467, 497 (1991).  To show prejudice, a defendant must demonstrate an error that worked to his actual and substantial disadvantage. *Frady*, 456 U.S. at 170.  Failure to show one or the other will preclude review of his claim. *See Engel v. Isaac*, 456 U.S. 107, 134 n.43 (1982).

As cause for his procedural default, Defendant asserts that he was deprived of the effective assistance of counsel. Attorney error may constitute cause excusing a procedural default if the error amounts to the ineffective assistance of counsel. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To establish a claim of ineffective assistance of counsel, Movant must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

In the context of an attorney's alleged failure to appeal, the Supreme Court has indicated that the *Strickland* standard continues to apply. *Roe v. Flores-Ortega*, 528 U.S.

470, 477 (2000). In reviewing such a claim, "'[j]udicial scrutiny of counsel's performance must be highly deferential.'" *Id.* at 477 (quoting *Strickland*, 466 U.S. at 689). Where an attorney fails to initiate an appeal after being specifically instructed to file, he acts in a manner that is professionally unreasonable. *Flores-Ortega*, 528 U.S. at 477 (citing *Rodriguez v. United States*, 395 U.S. 327 (1969)). However, a defendant who has instructed his attorney not to file an appeal cannot later complain that his counsel performed ineffectively. *Flores-Ortega*, 528 U.S. at 477. Where the defendant has not clearly conveyed his wishes one way or the other, a court must first consider whether counsel consulted with the defendant about an appeal, advising the defendant of the advantages and disadvantages of doing so, and making a reasonable effort to determine the defendant's wishes. *Id.* at 478; *see also Regalado v. United States*, 334 F.3d 520, 524 (6th Cir. 2003). If counsel did consult, his performance is constitutionally deficient only if counsel failed to appeal as expressly instructed by a defendant. *Regalado*, 334 F.3d at 524. If counsel failed to consult, that lack of consultation is professionally unreasonable only where (1) a rational defendant would want an appeal, or (2) a particular defendant reasonably demonstrated to counsel an interest in appealing. *Flores-Ortega*, 528 U.S. at 480. If counsel deficiently failed to consult, a defendant must demonstrate that "there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.* at 484.

9

A.   <u>Failure to Object to Criminal History Enhancement</u>

In his first claim of ineffective assistance of counsel, Defendant asserts that his attorney failed to object to the two-point (one-level) enhancement to his criminal history category on the grounds that he was on probation at the time he committed the offense in issue. He contends that he advised his attorney that he had been discharged from probation at the time of his alleged probation violation, and therefore he was not properly considered on probation at the time of the instant offense. Specifically, Defendant avers as follows:

> I further told Mr. Woods that I was not on probation when I was charged with this case but he did nothing to investigate it. In fact the warrant for the probation violation was from 1992 and should never had [sic] been issued as I completed all the terms of my probation.

(Aff. Tony Reral Anderson, ¶ 6.)

In response, defense counsel avers that his contemporaneous notes reflect that, on July 23, 2003, Defendant "stated regarding the drug charges in Berrien County that the Court extended his probation, that there was a bench warrant issued in 1993 and that he <u>believed</u> he was discharged." (Woods Aff.; Docket #166, Ex. 1.) According to defense counsel, Defendant never objected to the statement in the Presentence Report that he was on probation at the time of the present offense.

Defendant's belated assertions are not credible on the record evidence. Defendant clearly stated on the record at sentencing that he had had the opportunity to review the Presentence Report and to discuss it with his attorney. He also provided information to his attorney regarding twelve other objections to the Presentence Report, yet Defendant does not

10

even allege that he objected to the statement about which he presently complains. Further, Defendant placed no objection on the sentencing record to the increase in his criminal history category for having committed a crime while on probation. Instead, during allocution, Defendant expressed his sincere acceptance of responsibility and his determination to improve his life.

In the face of the extensive record to the contrary, Defendant's present averment that he was not on probation at the time of his offense conduct is wholly incredible. *See Arredondo*, 178 F.3d at 782 (evidentiary hearing not required if the petitioner's allegations "cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact"). Indeed, Defendant does not even attempt to demonstrate the inaccuracy of the information in the Presentence Report, which stated that Defendant was not released from probation until August 5, 2003. Inasmuch as Defendant's unsupported assertion is at odds with the record facts, the Court finds no basis for a hearing to determine credibility. *Id.*

    B.    *Apprendi* Claim

Defendant next raises a related claim that defense counsel was ineffective because he failed to raise a Sixth Amendment challenge to the two-level criminal history enhancement imposed by the Court after finding that Defendant was on probation at the time of the conviction. Defendant argues that competent counsel would have challenged the sentence under *Apprendi v. New Jersey*, 530 U.S. 466 (2000). In *Apprendi*, the Supreme Court held

that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime *beyond the statutory maximum* must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 489 (emphasis added). Defendant argues that the enhancement of his criminal history category increased his sentence beyond the statutory maximum within the clear meaning of *Apprendi*.

Defendant's argument is without merit. After *Apprendi*, the Sixth Circuit consistently held that the case applies only where the judicial sentencing finding increases the penalty . . . beyond the prescribed statutory maximum and does not apply to the Guidelines. *See, e.g., United States v. Lawrence*, 308 F.3d 623, 634 (6th Cir. 2002); *United States v. Garcia*, 252 F.3d 838, 843 (6th Cir. 2001); *see also United States v. DeJohn*, 368 F.3d 533, 546 (6th Cir. 2004); *United States v. Helton*, 349 F.3d 295, 299 (6th Cir. 2003); *United States v. Solorio*, 337 F.3d 580, 597 (6th Cir. 2003). In other words, at the time of Defendant's sentencing in 2003, the Sixth Circuit had squarely rejected his argument that *Apprendi* barred judicial fact-finding at sentencing that would increase any sentencing guideline level. As a consequence, had the issue been raised at sentencing, the law of the Sixth Circuit would have prevented this Court from applying *Apprendi* to the federal sentencing guidelines. Counsel cannot be found constitutionally ineffective for failing to raise an argument that would have been futile at the time it was made. *See Maples v. Coyle*, 171 F.3d 408, 427 (1999).

Moreover, four years after the Supreme Court's decision in *Apprendi*, the Court addressed the application of *Apprendi* to the State of Washington's sentencing guidelines. *See*

*Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531 (2004).  The *Blakely* Court concluded that *Apprendi* barred the increase of a sentence under state sentencing guidelines on the basis of any factual finding not made by a jury beyond a reasonable doubt.  *Blakely*, 124 S. Ct. at 3537.  Yet even after *Blakely*, the Sixth Circuit continued to hold that neither *Apprendi* nor *Blakely* applied to the federal sentencing guidelines, but instead applied only where the finding increases the penalty beyond the prescribed statutory maximum.  *See United States v. Koch*, 383 F.3d 436, 440 (6th Cir. 2004) (*en banc*).

Further, at the time of the sentencing hearing, both the Supreme Court and the Sixth Circuit had routinely rejected all constitutional challenges to the sentencing guidelines since their adoption.  *See, e.g., Edwards v. United States*, 523 U.S. 511 (1998) (rejecting a Sixth Amendment challenge to judicial findings of fact); *Mistretta v. United States*, 488 U.S. 361, 412 (1989) (rejecting challenge to guidelines on nondelegation and separation-of-powers grounds); *Lawrence*, 308 F.3d at 634 (rejecting Sixth Amendment challenge under *Apprendi*). Counsel therefore had no reason to anticipate a change in the law that occurred in *United States v. Booker*, 125 S. Ct. 738 (2005) (applying *Blakely* and *Apprendi* to the sentencing guidelines).

Finally, the Sixth Circuit squarely has held that the Supreme Court's decision in *Booker*, 125 S. Ct. 738, and its earlier decision in *Blakely*, 542 U.S. 296, both constituted "new rules" of criminal procedure, though they did not meet the requirements for retroactive application set forth by the Supreme Court in *Teague v. Lane*, 489 U.S. 288 (1989).  *See*

13

*Humphress v. United States,* 398 F.3d 855, 860-63 (6th Cir. 2005). The Sixth Circuit's determination that the decisions were new rules strongly suggests that reasonable counsel could have been expected to anticipate the change.

Taken together, not only does the evidence suggest that Defendant fully accepted the increase to his criminal history category on the basis of his probation status at the time of the offense, but also, at the time of sentencing, competent counsel would have understood that any challenge to the sentence under *Apprendi* was not supported by either Sixth Circuit or Supreme Court precedent. Competent counsel would not have anticipated the Supreme Court's application of *Apprendi* to the sentencing guidelines. As a result, defense counsel's representation at sentencing, when evaluated from the perspective of case law existing at the time of sentencing, did not fall below an objective standard of reasonableness. *Strickland*, 466 U.S. at 689.

    C.    <u>Failure to Investigate</u>

Third, Defendant suggests that counsel was ineffective in advising him to plead guilty because counsel had failed to provide him copies of the discovery materials received from the government, which he needed in order to make a knowledgeable decision to enter a guilty plea. Once again, Defendant's present claim is at odds with his testimony at the plea hearing and other record evidence. During the plea colloquy, the Magistrate Judge carefully questioned Defendant about his opportunity to consult with his attorney and his satisfaction with his attorney's representation. Defendant expressed his satisfaction and declared that he

had no unanswered questions. (Plea Tr. at 28-29.) Further, defense counsel has submitted a factually detailed affidavit disputing Defendant's general claim:

> As the attorney for Tony Reral Anderson, I did not recommend that he sign a Plea Agreement wherein he would be held responsible for distribution of 10 pounds of methamphetamine. I never recommend or encourage a client to plead guilty or not guilty, as that is solely their choice.
>
> I never told the Defendant that if he did not agree to plead guilty to a specific amount of drugs that he would be held responsible for beating Albert Brooks. It was my understanding that the Defendant was not even living in Michigan when Albert Brooks was assaulted.
>
> On April 10, 2003, I drove to Kalamazoo, MI., (113 mi. round trip) to review the evidence in this case with the FBI. I reviewed the evidence in Kalamazoo and I also received approximately 315 pages, some printed front and back, of lab reports, photos, telephone records, pages from address books, travel documents and car rental receipts, which I still have.
>
> On April 10, 2003, I thoroughly reviewed all of these documents with the Defendant at the Clinton County Jail.

(Woods Aff. at 1-2; Docket #166, Ex. 1.) Counsel further averred that he retained various letters from Defendant, which revealed that Defendant had initiated the plea negotiations and had expressed his intent to plead guilty mostly because of his children and his desire to reduce the potential sentence for their sakes. *Id.* In a letter postmarked September 2, 2003, Defendant expressed his intent not to contest the amount of drugs at sentencing so that the probation officer would re-write the Presentence Report. Notwithstanding the fact that counsel's affidavit was filed eight months ago, Defendant has failed to deny the validity of any of the referenced letters or the other representations made by counsel in his affidavit. Taken together, Defendant's present claim of ineffective assistance is patently unbelievable.

D.     Failure to Consult Regarding Appeal

In his final challenge to the effectiveness of defense counsel, Defendant asserts that his attorney failed adequately to consult with him regarding the availability of an appeal. He avers that counsel merely asked him if he wanted an appeal and advised him that he ran the risk of getting a higher sentence following any appeal. (Pl. Aff., ¶ 8.) He acknowledges that the Court advised him of the availability of an appeal and the time for filing an appeal, though he states that he "did not understand anything about the appeal procedure." (Pl. Aff., ¶ 9; Sent. Tr. at 13.) He contends, however, that

> I would have instructed Mr. Woods to file a timely Notice of Appeal had I known anything about the appeal process as I should not have been held accountable for the ten pounds of methamphetamine only one pound. I explained that to the probation officer and to my attorney repeatedly.

(Pl. Aff., ¶ 10.)

Defendant's claim is both contradictory and legally without merit. First, Defendant does not suggest that he specifically instructed his attorney to file an appeal. As a result, counsel's performance was not professionally unreasonable under the first circumstance discussed in *Flores-Ortega*, 528 U.S. at 477 (holding that where an attorney fails to initiate an appeal after being specifically instructed to file, he acts in a manner that is professionally unreasonable).

Second, Defendant has not demonstrated that counsel was deficient in failing to consult with Defendant regarding an appeal. Defendant's assertion that counsel failed to consult is internally inconsistent with his own recollection that counsel asked him if he wished to file

16

an appeal and that counsel advised him that, if he appealed his sentence, he ran the risk of receiving a stiffer sentence on remand. By his own admission in his affidavit, counsel conferred with him about at least some of the potential consequences of filing an appeal. As the Supreme Court held in *Flores-Ortega*, "'[j]udicial scrutiny of counsel's performance must be highly deferential.'" *Id.* at 477 (quoting *Strickland*, 466 U.S. at 689). Applying such deference to Defendant's own admissions, counsel unquestionably consulted with Defendant and may only be found ineffective if he failed to file an appeal as expressly requested. *Flores-Ortega*, 528 U.S. at 478. As the Court has noted, Defendant does not even argue that he made such a request.

Third, even were the Court to conclude that counsel did not confer with Defendant about the advantages and disadvantages of filing an appeal, Defendant cannot demonstrate counsel was ineffective on the facts of this case. As the Court previously has discussed, if counsel failed to consult, that lack of consultation is professionally unreasonable only where (1) a rational defendant would want an appeal, or (2) a particular defendant reasonably demonstrated to counsel an interest in appealing. *Flores-Ortega*, 528 U.S. at 480. Defendant nowhere suggests that he demonstrated an interest in appealing. Further, a rational defendant would not wish to file an appeal in the instant case. At the time of his conviction and sentence, Defendant had no viable claim under *Apprendi* and *Blakely*, notwithstanding his present assertions. He had no unresolved objections to his presentence report. He had admitted during his plea hearing to involvement with between 1.5 and 5 kilograms of

17

methamphetamine, in direct contradiction to his present assertion that he would have appealed being held responsible for more than one pound of the drug. He had received a reduction of three points for the timely acceptance of responsibility. And the Court had sentenced him to eighteen fewer months than recommended by the government and probation officer, a sentence that fell within the applicable sentencing range whether Defendant's criminal history was properly scored as a category two or category three. In addition, based on the plea agreement, Defendant had every reason to hope for a government-filed motion to reduce the sentence based on his cooperation. No rational defendant under these circumstances would seek to appeal his sentence.

Accordingly, Defendant's independent claims of ineffective assistance of counsel are without merit. Further, because counsel's performance was not constitutionally ineffective, it cannot serve as cause to excuse his procedural default of the remaining claims.[1] Where a petitioner fails to show cause, the court need not consider whether he has established prejudice. *See Engle v. Isaac*, 456 U.S. 107, 134 n.43 (1982). Because Movant has failed to

---

[1] Even had Defendant demonstrated the necessary cause, he could not demonstrate prejudice, since his claims under *Apprendi* and *Blakely* are patently without merit. The Sixth Circuit squarely has held that the Supreme Court's decision in *Booker*, 125 S. Ct. 738, and its earlier decisions in *Blakely*, 542 U.S. 296, and *Apprendi*, 530 U.S. 466, constituted "new rules" of criminal procedure, though they did not meet the requirements for retroactive application set forth by the Supreme Court in *Teague*, 489 U.S. 288. *See Humphress*, 398 F.3d at 860-63. As a consequence, Defendant would not have been entitled to relief on these claims.

meet the cause and prejudice standard, he is barred from raising his sentencing issues in this § 2255 proceeding.

## IV.

The files and records in this case conclusively show that the Defendant is entitled to no relief under § 2255. Accordingly, no evidentiary hearing is required to resolve the merits of the pending motion. For the reasons stated herein, the motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 must be denied. An order consistent with this opinion will be entered.

Date:   October 27, 2005              /s/ Robert Holmes Bell
                                      ROBERT HOLMES BELL
                                      CHIEF UNITED STATES DISTRICT JUDGE